JABAR, J., dissenting.
 

 [¶ 57] I respectfully dissent because I believe that the Court ignores the plain language of the statute and imposes additional burdens on family law litigants that the Legislature neither intended nor anticipated.
 

 A. Plain Meaning of the Statute and the Court Order
 

 [¶ 58] When we are required to interpret text-in legislation and in contracts-we are first and foremost guided by the principle that the plain language of the statute or document controls our analysis.
 
 See
 

 Griffin v. Griffin
 
 ,
 
 2014 ME 70
 
 , ¶ 18,
 
 92 A.3d 1144
 
 ;
 
 Daniel G. Lilley Law Office, P.A. v. Flynn
 
 ,
 
 2015 ME 134
 
 , ¶ 17,
 
 129 A.3d 936
 
 . We are similarly guided by this concept when tasked with interpreting court orders.
 
 See
 

 Burnell v. Burnell
 
 ,
 
 2012 ME 24
 
 , ¶ 15,
 
 40 A.3d 390
 
 . Led by this bedrock tenet, the analysis in this case must begin with an examination of the plain language of 19-A M.R.S. § 1653(12)(A) (2017), which states,
 

 12. Termination of order.
 
 A court order requiring the payment of child support remains in force as to each child
 until the order is altered by the court or until that child:
 

 A.
 
 Attains 18 years of age....
 

 [¶ 59] As written, the language of section 1653(12)(A) is simple, logical, and clear. Keeping in mind that roughly seventy-five percent of the litigants in family court navigate the system without an attorney,
 
 2014 Me. Laws 1654
 
 (State of the Judiciary address of Chief Justice Leigh I. Saufley to 2d Reg. Sess. of 126th Legis.), the language in section 1653(12)(A) clearly states that when a child turns eighteen, the order, as to that child, is no longer in force. Despite this clarity and simplicity, the Court now engrafts two new requirements upon section 1653(12)(A) : (1) a self-effectuation concept that is not present in the plain language of the statute, and (2) an affirmative duty upon litigants to initiate litigation that the statute neither anticipates nor requires. Court's Opinion ¶¶ 1, 15, 54-55.
 

 [¶ 60] After today's Opinion, if an obligor has more than one child, that obligor can no longer look to the plain language of section 1653(12)(A) in order to know what happens when one of their children turns eighteen. Section 1653(12)(A) is no longer sufficient on its own. The Court uses the new term, "self-effectuating," which does not appear in case law, in statute, or in the court order at issue in this case. Court's Opinion ¶¶ 1, 15. In
 
 Bartlett v. Anderson
 
 , the Court used the term "undifferentiated" to refer to the child support order, which did not provide a different amount when one child, but not the others, had reached the age of eighteen.
 
 2005 ME 10
 
 , ¶ 13,
 
 866 A.2d 829
 
 . In other words, undifferentiated orders do not distinguish between the amount owed for each child, but, rather, contain only one figure to represent the amount owed for all children. The
 
 Bartlett
 
 Court said that " section 1653(12)
 
 specifies no formula or method
 
 to adjust payment obligations when one child, among several covered by a single, undifferentiated child support payment obligation, reaches age eighteen."
 

 Id.
 

 (emphasis added).
 

 [¶ 61] Here, the Court's use of the term "self-effectuating" effectively amends section 1653(12)(A) to include a provision that the Legislature did not provide for in the statute. However, contrary to the Court's conclusion, an order can differentiate the amount owed for each child
 
 without
 
 creating a formula for calculating the remaining support owed for the children still under age eighteen. By interposing the concept of a "self-effectuating" order, the Court today takes the "undifferentiated" language from
 
 Bartlett
 
 one step further. Ultimately, the Court should not amend the statute to include a provision that it acknowledges the Legislature did not contemplate in the statute.
 

 [¶ 62] The Legislature did not qualify the straightforward plain language of the statute by adding that,
 
 if there are other children, then the order remains in effect beyond the oldest child's eighteenth birthday, until such time that the court makes adjustments to the order
 
 . Despite the absence of this or similar language in the statute, the Court today amends the plain language of section 1653(12)(A) to include this new requirement. Court's Opinion ¶ 40. Such a statutory amendment should be left to the Legislature.
 

 [¶ 63] Turning to this case, the child support order, which mirrors the statute, is clear: "The child support obligation shall continue for each child until that child reaches the age of 18 ...." The child support worksheet, which is incorporated into the child support order, distinguishes between the amount owed for the oldest child and the amount owed for the younger children. Based on the worksheet, it is a simple task to determine how much child support is attributed to the eighteen-year-old.
 

 The language in the order is clear and unambiguous and should therefore be given its full weight and effect. The overall child support obligation should have been reduced by the amount specified in the child support worksheet attributed to the oldest child when that child turned eighteen.
 

 B. Reliance on
 
 Bartlett
 

 [¶ 64] As the Court acknowledges, subsequent to
 
 Bartlett
 
 , the Legislature passed legislation to circumvent the harshness of the holding in that case. Court's Opinion ¶ 33; P.L. 2005, ch. 352, § 5 (codified as subsequently amended at 19-A M.R.S. § 2006(8)(G) (2017) ).
 
 [16]
 
 Because of this legislative action, any reliance on
 
 Bartlett
 
 is misplaced.
 

 [¶ 65] The new legislation placed the burden on the courts, not the obligor, and put the obligee, in this case, the State, on notice of the need for an order that makes an automatic adjustment when there are children who have not yet attained the age of eighteen.
 
 See
 
 19-A M.R.S. § 2006(8)(G). When the court fails to include such a "self-effectuating" provision in an order, and the obligee fails to secure such an order, then the plain meaning of the order and the statute should prevail: the obligor's obligation for a child ends when the child reaches age eighteen.
 

 [¶ 66] Furthermore,
 
 Bartlett
 
 did not turn on the need for a "self-effectuating" order; rather, it turned on the distinction between differentiated and undifferentiated orders.
 
 See
 

 Bartlett
 
 ,
 
 2005 ME 10
 
 , ¶ 17,
 
 866 A.2d 829
 
 . The
 
 Bartlett
 
 Court concluded that the order was undifferentiated.
 
 See
 ids="9038786" index="80" url="https://cite.case.law/a2d/866/829/">
 id.
 

 However, based on the incorporated child support worksheet in
 
 Bartlett
 
 , it is arguable that the order there, like the order here, was differentiated because the worksheet delineated the different amounts owed for the children based upon their ages. The
 
 Bartlett
 
 opinion does not demonstrate whether that issue-differentiated versus undifferentiated-was fully litigated on appeal.
 

 C. Conclusion
 

 [¶ 67] With its opinion today, the Court is not only legislating new requirements for litigants involved in family matters, it is increasing the volume of litigation and making the process exceedingly more complicated for the many self-represented litigants in family court. Given the plain language of both section 1653(12)(A) and the order in this case, when the child attained the age of eighteen, the child support obligation for that child should have terminated without the need for the obligor to return to court.
 

 As the Court intimates, the subsequent amendment has no relevance here. Court's Opinion ¶ 33 n.11.